**BLUMENTHAL & NORDREHAUG**
Norman B. Blumenthal (CSB #068687)
Kyle R. Nordrehaug (CSB #205975)
Aparajit Bhowmik (CSB #248066)
2255 Calle Clara
La Jolla, CA 92037
Telephone: (858) 551-1223
Facsimile: (858) 551-1232

**UNITED EMPLOYEES LAW GROUP**
Walter Haines, (CSB #71075)
65 Pine Ave, #312
Long Beach, CA 90802
Telephone: (562) 256-1047
Facsimile: (562) 256-1006

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DONOVAN DELMARE, an individual, on behalf of himself, and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SUNGARD HIGHER EDUCATION, INC., a Delaware Corporation; SYSTEMS AND COMPUTER TECHNOLOGY CORPORATION, a Delaware Corporation,<br><br>Defendants. | CASE No. 07 CV 1801 W (CAB)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT<br><br>Date: November 17, 2008<br>Time: 10:00 a.m.<br>[No oral argument on the hearing date pursuant to L.R. 7.1(d)(1), unless ordered by the Court]<br><br>Judge: Hon. Thomas J. Whelan<br>Courtroom: 7, 3rd Floor |

# TABLE OF CONTENTS

I. INTRODUCTION . . . . . 1

II. DESCRIPTION OF THE PROPOSED SETTLEMENT . . . . . 1

III. NATURE OF THE CASE . . . . . 2

IV. PLAN OF ALLOCATION . . . . . 5

V. THE SETTLEMENT MEETS ALL CRITERIA NECESSARY FOR PRELIMINARY APPROVAL . . . . . 8

A. The Role Of The Court In Preliminary Approval Of A Class Action Settlement . . . . . 9

B. Factors To Be Considered In Granting Preliminarily Approval . . . . . 10

1. The Settlements are the Product of Serious, Informed and Noncollusive Negotiations . . . . . 11
2. The Settlement Has No "Obvious Deficiencies" and Falls Within the Range for Approval . . . . . 13
3. The Settlement Does Not Improperly Grant Preferential Treatment To Class Representatives or Segments Of The Class . . . . . 17
4. The Stage Of The Proceedings Are Sufficiently Advanced To Permit Preliminary Approval Of These Settlements . . . . . 17

VI. THE CLASS IS PROPERLY CERTIFIED FOR SETTLEMENT PURPOSES . . . . . 19

A. Rule 23 of the Federal Rules of Civil Procedure Governs . . . . . 19

B. The Numerosity Requirement Is Satisfied . . . . . 20

C. Common Questions of Law Bind the Class . . . . . 20

D. The Claims of the Plaintiff Are Typical of the Class Claims . . . . . 21

E. The Named Plaintiff Have Fairly and Adequately Protected the Interest of the Class . . . . . 22

F. The Additional Requirements of Rule 23(b)(3) . . . . . 23

VII. THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE . . . . . 25

VIII. CONCLUSION . . . . . 25

## TABLE OF AUTHORITIES

**Cases:**


Ansari v. New York Univ., 179 F.R.D. 112 (S.D.N.Y. 1998) . . . . . 18

Armstrong v. Board of School Directors, 616 F.2d 305 (7th Cir. 1980) . . . . . 9

Buchholtz v. Swift & Co., 62 F.R.D. 581 (D.Minn. 1973) . . . . . 21

Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473 (2d Cir. 1995) . . . . . 18

Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974) . . . . . 9

Donaldson v. Pillsbury Co., 554 F.2d 825 (8th Cir. 1977) . . . . . 19

EEOC v. Kovacevich "5" Farms, 2007 U.S. Dist. LEXIS 32330 (E.D.Cal. April 18, 2007) . . . . . 18

Fisher Bros. v. Cambridge-Lee Indus., Inc., 630 F. Supp. 482 (E.D. Pa. 1985) . . . . . 9

Gautreaux v. Pierce, 690 F.2d 616 (7th Cir. 1982) . . . . . 8

Glass v. UBS Fin. Servs., 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27, 2007) . . . . . 12-17

Hanlon v. Chrysler Co., 150 F.3d 1011 (9th Cir. 1998) . . . . . 13, 19

Heffelfinger v. Elec. Data Sys. Corp., 2008 U.S. Dist. LEXIS 46461 (C.D. Cal. June 6, 2008) . . . . . 14

In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768 (3d Cir. 1995) . . . . . 9

In re Jiffy Lube Sec. Litig., 927 F.2d 155 (4th Cir. 1991) . . . . . 9

In re Wash. Public Power Supply System Sec. Litig., 720 F. Supp. 1379 (D. Ariz. 1989) . . . . . 11

In re Wells Fargo Home Mortg. Overtime Pay Litig., 2007 U.S. Dist. LEXIS 77525 (N.D. Cal. October 17, 2007) . . . . . 22

In re Wirebound Boxes Antitrust Lit., 128 F.R.D. 268 (D. Minn. 1989) . . . . . 21

In re Workman's Comp.,
130 F.R.D. 99 (1990) . . . . . . . . . 19, 22

Jenkins v. Raymark Ind., Inc.,
782 F.2d 468 (5th Cir. 1986) . . . . . . . . . 18-19

Jenson v. Continental Fin. Corp.,
404 F. Supp. 806 (D. Minn. 1975) . . . . . . . . . 18

Jordan v. County of Los Angeles,
669 F.2d 1311 (9th Cir. 1982) . . . . . . . . . 18

Kirkorian v. Borelli,
695 F. Supp. 446 (N.D. Cal. 1988) . . . . . . . . . 9

Krzesniak v. Cendant Corp.,
2007 U.S. Dist. LEXIS 47518 (N.D. Cal. June 20, 2007) . . . . . . . . . 22

Lockwood Motors, Inc. v. General Motors Corp.,
162 F.R.D. 569 (D. Minn. 1995) . . . . . . . . . 18, 19, 21

Lyons v. Marrud, Inc.,
[1972-1973 Transfer Binder] Fed. Sec. L. Rep.
(CCH) Paragraph 93,525 (S.D.N.Y. 1972) . . . . . . . . . 9

Officers for Justice v. Civil Serv. Comm'n,
688 F.2d 615 (9th Cir. 1982) . . . . . . . . . 9

Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,
323 F. Supp. 364 (E.D. Pa. 1970) . . . . . . . . . 8

Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,
390 U.S. 414 (1968) . . . . . . . . . 9

Reed v. General Motors Corp.,
703 F.2d 170 (5th Cir. 1983) . . . . . . . . . 9

Slaven v. BP Am., Inc.,
190 F.R.D. 649 (C.D. Cal. 2000) . . . . . . . . . 18

Staton v. Boeing,
327 F.3d 938 (9th Cir. 2003) . . . . . . . . . 8

Tate v. Weyerhaeuser Co.,
723 F.2d 598 (8th Cir. 1983) . . . . . . . . . 19

Tierno v. Rite Aid Corp.,
2006 U.S. Dist. LEXIS 71794, (N.D. Cal. Aug. 31, 2006) . . . . . . . . . 22

Valentino v. Carter-Wallace, Inc.,
97 F.3d 1227, 1234 (9th Cir. 1996) . . . . . . . . . 22

Wang v. Chinese Daily News,
231 F.R.D. 602 (C.D. Cal. 2005) . . . . . . . . . 22

Weinberger v. Kendrick,
698 F.2d 61 (2d Cir. 1982) . . . . . . . . . . 9

White v. Local 942,
688 F.2d 85 (9th Cir. 1982) . . . . . . . . . . 20

**Statutes:**

29 U.S.C. § 216 . . . . . . . . . . 4

Cal. Business and Professions Code §17200 . . . . . . . . . . 3

Cal. Labor Code §2698 . . . . . . . . . . 3

Cal. Labor Code §204 . . . . . . . . . . 3

Cal. Labor Code §210 . . . . . . . . . . 4

Cal. Labor Code §218 . . . . . . . . . . 4

Cal. Labor Code §226 . . . . . . . . . . 4

Cal. Labor Code §226.7 . . . . . . . . . . 4

Cal. Labor Code §510 . . . . . . . . . . 4

Cal. Labor Code §512 . . . . . . . . . . 4

Cal. Labor Code §1194 . . . . . . . . . . 4

Cal. Labor Code §1198 . . . . . . . . . . 4

Fed. Rules Civ. Proc., rule 23 . . . . . . . . . . *passim*

**Secondary Authorities:**

2 H. Newberg & A. Conte, Newberg on Class Actions (3d ed. 1992) . . . . . . . . . . 8, 21, 24, 25

Manual for Complex Litigation, Second §30.44 (1993) . . . . . . . . . . 8, 10

3B J. Moore, Moore's Federal Practice §§23.80 - 23.85 (2003) . . . . . . . . . . 9

Plaintiff Donovan Delmare ("Plaintiff") respectfully submits this memorandum of points and authorities in support of Plaintiff's motion for preliminary approval of settlement of this class action.

## I. INTRODUCTION

Plaintiff and Defendant SunGard Higher Education, Inc. ("SunGard") have reached a full and final settlement of the above-captioned action, which is embodied in the Joint Stipulation of Settlement and Release between Plaintiff and Defendant ("Settlement Agreement") filed concurrently with the Court. By this motion, Plaintiff seeks preliminary approval from the Court of the Settlement Agreement (a copy of which is attached as Exhibit A to the Declaration of Norman Blumenthal, served and filed herewith), conditional certification of the Settlement Class and approval of the Preliminary Approval Order for Final Approval of the Class Settlement.[1]

## II. DESCRIPTION OF THE SETTLEMENT

Counsel for the Parties, after litigation and settlement negotiations, agreed to a settlement that is fair, reasonable and favorable to the Class, which includes all individuals who work or worked in California for SunGard Higher Education Inc., SunGard Higher Education Managed Services Inc, or Systems and Computer Technology Corporation in a Covered Position at any time during the period from September 13, 2003 and September 1, 2008. The Covered Positions are a position with Network Specialist or Network Administrator in the title in California.

The Parties submitted to mediation before Mark Rudy, a preeminent litigator and mediator of wage and hour class actions. Declaration of Norman Blumenthal, ("Decl. Blumenthal") ¶5. As a result of the all day mediation, the parties reached a settlement that they believe to be fair and reasonable in light of the experience of the Parties' attorneys as Counsel in other wage and hour cases, and the uncertainties and cost of the years of litigation the Parties faced if the settlement was not reached. Decl. Blumenthal, ¶5.

Under the terms to which the Parties have agreed, SunGard shall pay an amount not to exceed Four Hundred Fifty Thousand Dollars ($450,000.00) as the Maximum Settlement Amount to resolve the

---

[1] Capitalized terms in this Memorandum have the same meaning as contained in the Stipulation and Settlement Agreement.

Action on a class-wide basis. Decl. Blumenthal, ¶3. This sum is inclusive of all claims of the Settlement Class members, as well as Class Counsel's attorneys' fees and costs, incentive award for the Class Representative, PAGA payments, and the cost of class notice and claims administration.

This is a fair result for the members of the Settlement Class. Liability in this case was uncertain because some or all of the Class Members may have been exempt from certain pay requirements applicable to nonexempt employees. Indeed, some courts have found exemptions to apply in cases involving similar facts. Decl. Blumenthal, ¶ 6. Moreover, there was further uncertainty as to whether class certification could have been achieved and maintained throughout the litigation.

**III. NATURE OF THE CASE**

On September 13, 2007, Plaintiff filed a lawsuit against SunGard Higher Education Inc., Systems And Computer Technology Corporation in the U.S. District Court for the Southern District of California, Case No. 07CV1801 W (CAB). The action was filed as a class and collective action on behalf of all current and former Network Specialists and other similarly situated positions who were employed by SunGard and its predecessor during the applicable limitations periods.

On October 23, 2007, Plaintiff filed a First Amended Complaint, and on June 2, 2008, filed the operative Second Amended Complaint ("Complaint"). In his Complaint, Plaintiff alleged seven causes of action, for failure to pay regular and overtime compensation under the FLSA and California Labor Code; failure to provide wages when due; failure to provide accurate itemized wage statements§; failure to indemnify pursuant to California Labor Code section 2802; unfair business practices pursuant to California Business and Professions Code sections 17200 *et seq.*; and statutory penalties under PAGA, California Labor Code section 2699. Decl. Blumenthal ¶¶ 7-9.

Although a settlement has been reached, SunGard denies any and all liability or wrongdoing of any kind associated with the claims alleged in the Complaint. Further, SunGard denies that the claims asserted are suitable for class treatment. SunGard maintains, among other things, that they have complied at all times with the California Labor Code, that the members of the putative class are properly classified as exempt under California law and that all members of the putative class were properly paid all wages owed to them. Specifically, in SunGard's view, the Settlement Class Members are properly

classified as exempt because they spent the majority of their time engaged in work directly related to the general business operations of SunGard and were, therefore, covered under the administrative exemption. Further, SunGard contends that class certification would be inappropriate because the Named Plaintiff does not share common issues of fact or law with the proposed class, they are not an adequate representative of the proposed class, their claims are not typical of the proposed class, and class treatment would require the Court to conduct individualized inquiries that would predominate over common questions of law or fact. Decl. Blumenthal, ¶10.

Plaintiff contends that SunGard violated California wage and hour laws and that the Action is appropriate for class certification on the basis that the Named Plaintiff's claims meet the requisites for class certification. Without admitting that class certification is proper, SunGard has stipulated that a Class of employees in California with the titles Network Specialist or Network Administrator may be certified for settlement purposes only. The Parties agree that certification for settlement purposes is not an admission that class certification would be proper if the class certification issue were litigated. Further, this agreement is not admissible in this or any other proceeding as evidence that the Class could be certified absent a settlement. Solely for purposes of settling the lawsuits, the Parties stipulate and agree that the requisites for establishing class certification with respect to the Class, as defined above, have been met and are met. Decl. Blumenthal ¶ 11.

Class Counsel has conducted a thorough investigation into the facts of the class action. Class Counsel has diligently evaluated the Class Members' claims against SunGard. Prior to the Parties engaging in mediation, the Parties engaged in formal discovery and counsel for SunGard provided Class Counsel with access to Class Member data, including data reflecting the weeks worked by the Class Members and relevant salary information for the positions at issue. Based on the foregoing data and their own independent investigation and evaluation, Class Counsel believes that the settlement with SunGard for the consideration and on the terms set forth in this Settlement Agreement is fair, reasonable, and adequate and is in the best interest of the Class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by SunGard, and numerous potential appellate issues. Decl. Blumenthal at ¶ 12. SunGard and SunGard's counsel also agree that the Settlement is fair

and in the best interest of the Class.

## IV. PLAN OF ALLOCATION

In consideration for settlement of this Action and a release of the claims, SunGard agrees to pay an amount not to exceed Four Hundred Fifty Thousand U.S. Dollars ($450,000.00) as the Maximum Settlement Amount to resolve the Action on a class-wide basis, as described more fully below. Decl. Blumenthal, ¶ 13. The Maximum Settlement Amount includes the costs of administration of the settlement (not to exceed $10,000), reasonable attorneys' fees of Class Counsel as determined by the Court (not to exceed 25% of the Maximum Settlement Amount of $450,000), actual litigation expenses incurred by Class Counsel (not to exceed $15,000.00), service enhancement to Class Representative Donovan Delmare (not to exceed $10,000.00), Twenty-Five Thousand U.S. Dollars ($25,000) attributable to PAGA penalties, of which 75% shall be paid to the California Labor and Workforce Development Agency with the balance to Qualified Claimants. Of the Maximum Settlement Amount, a Minimum Payment (One Hundred Thirty-One Thousand, Eight Hundred Seventy-Five U.S. Dollars ($131,875.00)) shall be paid to Qualified Claimants. Payments shall be made to all Class Members who are Qualified Claimants, but in no event will the aggregate of payments to Qualified Claimants total less than the Minimum Payment. Decl. Blumenthal, ¶ 14.

All settlement payments to Qualified Claimants are allocated as follows: unpaid wages (50% of each settlement payment), penalties (20% of each settlement payment) and interest (30% of each settlement payment). SunGard will pay the employer's portion of payroll taxes, including, but not limited to FICA and FUTA, on the 50% of each settlement payment allocated to unpaid wages. Class Members must pay their own portion of payroll and income taxes on the 50% of each settlement payment that is unpaid wages, and such amounts will be withheld from settlement payments.

Each Class Member will be entitled to apply to receive a settlement payment (the "Settlement Payment"). The Settlement Payment eligibility for a Class Member shall be calculated as follows: Weeks worked by Class Members will be calculated by the Claims Administrator based on inception and termination dates for weeks worked during the liability period of September 13, 2003 to September 1, 2008. Only full weeks will be counted, i.e., if an employee was hired or terminated mid-week then that

week will not count as a week worked. "Adjusted Weeks Worked" shall be the sum of one (1) times all Regular Work Weeks (as defined herein) and one and one-quarter times (1.25) times all On-Call Work Weeks (as defined herein) for an individual Class Member, *i.e.* Adjusted Weeks Worked = (Regular Work Weeks) + (1.25 x On-Call Work Weeks). Decl. Blumenthal, ¶15. The Claims Administrator will be Gilardi & Company.

As per paragraph VI(G) of the Settlement Agreement, the Claims Administer shall calculate the number of Adjusted Weeks Worked as follows: Class Members will receive one week of credit for each Regular Work Week. Class Members will receive 1.25 weeks of credit for each On-Call Work Week. The total of all Adjusted Weeks Worked for all Class Members shall yield the total Class Weeks Worked. Work weeks shall be calculated only for the period September 13, 2003 through September 1, 2008. Decl. Blumenthal, ¶16.

Each Class Member's Adjusted Weeks Worked shall be divided by the Class Weeks Worked to determine that Class Member's percentage of the Net Maximum Amount that the Class Member will be eligible to receive. Thus, an individual's payment will equal his/her Adjusted Weeks Worked divided by the Class Weeks Worked, times the Net Maximum Amount, provided, however, in the event the amount claimed by Qualified Claimants as a group does not equal the Minimum Payment amount, the amount paid to each Qualified Claimant shall be adjusted upward on a percentage basis to pay out the Minimum Payment amount to the Qualified Claimants. Id.

Only Qualified Claimants shall be entitled to a Settlement Payment. The Claims Administrator shall withhold from each Qualified Claimant's Settlement Payment, Qualified Claimant's share of applicable payroll taxes. SunGard shall pay to the Claims Administrator funds equal to the amount of claims by Qualified Claimants (which the Claims Administrator certifies to comply with the claims process) that have not been disputed as provided below, plus the amount of any claims that have been disputed but that have been resolved, within fifteen (15) business days after Final Approval. In the case of disputed claims, if such claims are not resolved by the date of Final Approval, then within fifteen (15) calendar days of receipt of notice of the final decision with respect to such claims, SunGard shall timely pay or cause to be paid those claims. Decl. Blumenthal, ¶ 17.

Twenty-Five Thousand U.S. Dollars ($25,000.00) of the Maximum Settlement Amount is allocated to PAGA claims. Of this amount, 75% shall be paid to the LWDA with the balance to the Qualified Class Members. Labor Code section 2699(i) requires that any settlement under this section is distributed as follows: 75% to the LWDA for enforcement of labor laws and education of employers and 25 % to aggrieved employees. Therefore, $18,750 will be paid to the State. The remaining $6,250 will be distributed on a pro rata basis to Qualified Claimants. Decl. Blumenthal, ¶18.

SunGard shall pay to the Claims Administrator funds equal to the amount of claims by Qualified Claimants (which the Claims Administrator certifies to comply with the claims process) that have not been disputed as provided below, plus the amount of any claims that have been disputed but that have been resolved, within fifteen (15) business days after Final Approval. Decl. Blumenthal, ¶ 19. Settlement Payments to Class Members will be in the form of a check.

Class Counsel shall apply to the Court for an award of reasonable attorneys' fees not to exceed 25% of the Maximum Settlement Amount. Class Counsel shall also apply for an award of reimbursement of actual litigation costs not to exceed $15,000. SunGard will pay the amount awarded for attorneys' fees and litigation costs to the Claims Administrator within fifteen (15) business days following Final Approval. Decl. Blumenthal, ¶ 20.

## V. THE SETTLEMENT MEETS ALL CRITERIA NECESSARY FOR PRELIMINARY APPROVAL

When a proposed class-wide settlement is reached, the settlement must be submitted to the court for approval. Fed. R. Civ. P. 23(e)(1)(A); 2 H. Newberg & A. Conte, Newberg on Class Actions (3d ed. 1992) at §11.41, p.11-87. Preliminary approval is the first of three steps that comprise the approval procedure for settlements of class actions. The second step is the dissemination of notice of the settlement to all class members. The third step is a final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented and class members may be heard regarding the settlement. See Manual for Complex Litigation, Second §30.44 (1993).

The question presented on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement is "within the range of possible approval." Manual for

Complex Litigation, Second §30.44 at 229; Gautreaux v. Pierce, 690 F.2d 616, 621 n.3 (7th Cir. 1982). Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement . . . may be submitted to members of the prospective Class for their acceptance or rejection." Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 323 F. Supp. 364, 372 (E.D. Pa. 1970). There is an initial presumption of fairness when a proposed settlement, which was negotiated at arm's length by counsel for the Class, is presented for court approval. Newberg, 3d Ed., §11.41, p.11-88. However, the ultimate question of whether the proposed settlement is fair, reasonable and adequate is made after notice of the settlement is given to the class members and a final settlement hearing is held by the Court.

**A. The Role Of The Court In Preliminary Approval Of A Class Action Settlement**

The approval of a proposed settlement of a class action suit is a matter within the broad discretion of the trial court. Staton v. Boeing, 327 F.3d 938, 959 (9th Cir. 2003). Preliminary approval does not require the trial court to answer the ultimate question of whether a proposed settlement is "fair, reasonable and adequate." In re Jiffy Lube Sec. Litig., 927 F.2d 155, 158 (4th Cir. 1991); Manual for Complex Litigation, Third, §§ 20.212. That determination is made only after notice of the settlement has been given to the members of the class and after the class members have been given an opportunity to voice their views of the settlement or to be excluded from the settlement Class. See, e.g., 3B J. Moore, Moore's Federal Practice §§23.80 - 23.85 (2003).

In considering a potential settlement for preliminary approval purposes, the trial court does not have to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute (Detroit v. Grinnell Corp., 495 F.2d 448, 456 (2d Cir. 1974)), and need not engage in a trial on the merits. Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983). The court is not required to determine that certification of a settlement class is appropriate until the final settlement approval. In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 797 (3d Cir. 1995).

The question of whether a proposed settlement is fair, reasonable and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "the

terms of the compromise with the likely rewards of litigation." Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982), cert. denied 464 U.S. 818 (1983) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968)). Therefore, many courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight. Kirkorian v. Borelli, 695 F. Supp. 446, 451 (N.D. Cal. 1988); Reed v. General Motors Corp., 703 F.2d 170, 175 (5th Cir. 1983); Weinberger, 698 F.2d at 74; Armstrong v. Board of School Directors, 616 F.2d 305, 325 (7th Cir. 1980); Fisher Bros. v. Cambridge-Lee Indus., Inc., 630 F. Supp. 482, 489 (E.D. Pa. 1985). For example, in Lyons v. Marrud, Inc., [1972-1973 Transfer Binder] Fed. Sec. L. Rep. (CCH) Paragraph 93,525 (S.D.N.Y. 1972), the court noted that "[e]xperienced and competent counsel have assessed these problems and the probability of success on the merits. They have concluded that compromise is well-advised and necessary. The parties' decision regarding the respective merits of their position has an important bearing on this case." Id. at ¶ 92,520.

**B. Factors To Be Considered In Granting Preliminarily Approval**

A number of factors are to be considered in evaluating a settlement for purposes of preliminary approval. No one factor should be determinative, but rather all factors should be considered. These criteria have been summarized as follows:

> If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement. Manual of Complex Litigation, Second §30.44, at 229. Here, the settlement meets all of these criteria.

**1. The Settlement is the Product of Serious, Informed and Noncollusive Negotiations**

This settlement is the result of extensive and hard fought negotiations. SunGard denies each and every one of the claims and contentions alleged in this Action. SunGard has asserted and continues to assert many defenses thereto, and has expressly denied and continues to deny any wrongdoing or legal liability arising out of the conduct alleged in the Action. Nonetheless, SunGard has concluded that this

Action be settled in the manner and upon the terms and conditions set forth in the Stipulation of Settlement in order to avoid the expense, inconvenience, and burden of further legal proceedings, and the uncertainties of trial and appeals. SunGard has decided to put to rest the Released Claims of the Settlement Class.

Settlement negotiations took place before Mark Rudy, one of the preeminent litigators and mediators of wage and hour class actions. Counsel for the Parties, after settlement negotiations lasting the entire day, reached an agreement, based upon Mr. Rudy's expertise as a mediator and the uncertainties of protracted litigation. Decl. Blumenthal ¶ 5. Most importantly, Plaintiff and Class Counsel believe that this settlement is fair, reasonable and adequate. By reason of the settlement, SunGard has agreed to pay up to $450,000.00 as payment in full of all of the Class claims arising from the events described in the Complaint, including Class Counsel's attorneys' fees and expenses, PAGA payments, Class Representatives' incentive awards, and the cost of class notice and claims administration.

Class Counsel has conducted a thorough investigation into the facts of the class action, including an extensive review of relevant documents and data, and have diligently pursued an investigation of the Settlement Class Members' claims against SunGard. Decl. Blumenthal ¶ 12. Based on the foregoing documents and data and their own independent investigation and evaluation, Class Counsel is of the opinion that the settlement with SunGard for the consideration and on the terms set forth in this Stipulation of Settlement is fair, reasonable, and adequate and is in the best interest of the class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by SunGard, and numerous potential appellate issues. SunGard and SunGard's counsel also agree that the Settlement is fair and in the best interest of the Class Members.

Plaintiff and Class Counsel recognizes the expense and length of continuing to litigate and trying this Action against SunGard through possible appeals which could take several years. Class Counsel has also taken into account the uncertain outcome and risk of litigation, especially in complex actions such as this Action. Class Counsel is also mindful of and recognize the inherent problems of proof under, and alleged defenses to, the claims asserted in the Action. Based upon their evaluation, Plaintiff and Class

Counsel has determined that the settlement set forth in the Stipulation is in the best interest of the Class Members. Decl. Blumenthal ¶ 21.

Here the negotiations have been hard-fought and aggressive with capable advocacy on both sides. Accordingly, "[t]here is likewise every reason to conclude that settlement negotiations were vigorously conducted at arms' length and without any suggestion of undue influence." In re Wash. Public Power Supply System Sec. Litig., 720 F. Supp. 1379, 1392 (D. Ariz. 1989).

**2. The Settlement Has No "Obvious Deficiencies" and Falls Within the Range for Approval**

The proposed Settlement herein has no "obvious deficiencies" and is well within the range of possible approval. All Settlement Class Members will receive an opportunity to participate in and receive payment.

For the members of the Class, the overtime hourly rate used was the rate of $40.47. The number of workweeks involved was approximately 6,000 for the Class Period. Each one (1) hour per workweek of unpaid overtime for the Class equals $242,820 for the Class Period. Each one (1) hour per workweek of unpaid on-call overtime for the Class equals $242,820 for the Class Period. As a result, Plaintiff claimed SunGard was subject to claims at a rate of $485,640 for the combination of one unpaid hour of overtime and one unpaid on-call hour of overtime per workweek for the Class. Decl. Blumenthal, ¶ 6.

Plaintiff was of the opinion that claims of approximately three (3) hours of overtime and approximately four (4) hours of on-call time per work week could be proven, amounting to a provable claim of $1,699,740. The settlement of $450,000.00, before deductions, represents 26% of the subject claims, assuming these amounts could be proven at trial. Id.

In Glass v. UBS Fin. Servs., 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27, 2007) the federal district court for the Northern District of California recently approved a settlement of an action claiming unpaid overtime wages where the settlement amount constituted only approximately 25 to 35% of the estimated actual loss to the class. Here the settlement consideration constitutes a fair and

reasonable percentage of the estimated actual loss to the class.[2]

In Glass, the federal court ruled that the settlement which represented approximately 25% to 35% of the loss to the class was fair, reasonable, and adequate. Id. at 28. A fortiori, this settlement is most certainly entitled to preliminary approval.

Where both sides face significant uncertainty, the attendant risks favor settlement. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). Here, a number of defenses asserted by SunGard present serious threats to the claims of Plaintiff and the other Class Members. For example SunGard contended that many Class Members were barred from recovery by the "administrative exemption" set forth in 29 C.F.R. Section 541.402, which provides:

> Computer employees within the scope of [the computer professional exemption] may also have . . . administrative duties which qualify the employees for exemption under [the administrative exemption]. For example, systems analysts and computer programmers generally meet the duties requirement for the administrative exemption if their primary duty includes work such as planning, scheduling, and coordinating activities required to develop systems to solve complex business, scientific or engineering problems of the employer or the employer's customers.

SunGard also relied on 29 C.F.R. § 541.201(a)(b) which provides:

> Work "directly related to management or general business operations" includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

These federal regulations specifically identify work as a project manager as an example of that which qualifies for the administrative exemption. 29 C.F.R. Section 541.203 (c) states: "An employee who leads a team of other employees assigned to complete major projects for the employer . .. generally meets the duties requirements for the administrative exemption, even if the employee does not have direct supervisory responsibility over the other employees on the team."

---

[2] In Glass, the federal court granted preliminary approval of the settlement although the parties failed to submit evidence verifying their estimate of the total loss to the class. At the final fairness hearing, the parties presented a lengthy discussion of the above-referenced estimate, in which they represented that their estimate of the maximum loss to the class was based on hard data obtained from interviews with class members, computer log-in records, and payroll records. Id. at *28-*29. The parties estimate of the total loss to the Settlement Class here is based on the same type of hard data that was not submitted in Glass until final settlement approval was sought.

In Bagwell v. Florida Broadband, 2005 WL 1962562, (S.D. Fla. 2005), the district court found that a network operation engineer was exempt under both the administrative and the computer professional exemptions to the FLSA. The court found that the administrative exemption applied where plaintiff's primary duty was developing, improving, and making Florida Broadband's network system function reliably. Although the plaintiff performed some physical work, such as installations, the court found that the plaintiff's primary duty was not manual because the predominance of plaintiff's duties were problem-solving, office and administrative duties. Id. at 1323-24.

In Koppinger v. American Interiors, Inc., 295 F. Supp. 2d 797 (N.D. Ohio 2003), the court granted summary judgment for the employer, finding that the plaintiff who was responsible for maintaining the company's computer system qualified for the administrative exemption.

> [The plaintiff's] duties consisted of ordering replacement parts, recommending purchases of new software and hardware, installing software, and repairing equipment for the company's computer users. When users called in with computer problems, plaintiff determined the priority of and when and how to handle those problems. No one set his priorities; he worked largely, if not entirely, independently. . . . While the plaintiff did a fair amount of work loading software and fixing computers and other equipment, he also made recommendations about what software and hardware the company should purchase.

Id. at 799;[3] Decl. Blumenthal, ¶23-25.

There was also a risk that, if this Actions was not settled, Plaintiff would be unable to obtain class certification and thereby not recover on behalf of any SunGard employees other than himself. In Dunbar v. Albertson's, Inc., 141 Cal. App. 4th 1422, 1431-32 (2006), the California Court of Appeal recently affirmed an order denying class certification to a class of employees who claimed that they were denied overtime pay because whether the executive exemption applied would have had to have been individually determined for each class member which meant that common issues did not predominate. Similarly, here SunGard would have certainly argued in opposing class certification that individual

---

[3] See also Heffelfinger v. Elec. Data Sys. Corp., 2008 U.S. Dist. LEXIS 46461 (C.D. Cal. June 6, 2008) (court held that classes of information technology workers were exempt under the administrative exemption); Hickman v. United States, 10 Cl. Ct. 550, 561 (1986) (court held that an electronics technician and a computer equipment analyst were exempt under the administrative exemption); Shillinglaw v. System Works, Inc., 1993 WL 603289 (N.D. Ga. 1993) (holding that the plaintiff, who was employed as a computer programmer/analyst was an exempt administrative employee); Raper v. State of Iowa, 688 N.W.2d 29, 43 (Iowa 2004).

issues predominated because the applicability of the administrative exemption would have to be separately determined for each Class Member based on their individual experience. While other cases have approved class certification in overtime wage claims, class certification in this action would have been hotly disputed and was by no means a foregone conclusion.

After vigorous negotiations, the mediator presented the parties with a mediator's proposal of $450,000. Recognizing the potential risks, both sides agreed. As the federal court recently held in Glass, where the parties faced uncertainties similar to those here:

> In light of the above-referenced uncertainty in the law, the risk, expense, complexity, and likely duration of further litigation likewise favors the settlement. Regardless of how this Court might have ruled on the merits of the legal issues, the losing party likely would have appealed, and the parties would have faced the expense and uncertainty of litigating an appeal. "The expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement."

See In re Mego Financial Corp. Securities Litigation, 213 F.3d 454, 458 (9th Cir. 2000). Here, the risk of further litigation is substantial.

### 3. The Settlement Does Not Improperly Grant Preferential Treatment To The Class Representative or Segments Of The Class

The relief provided in the settlement will benefit all Class Members equally. The settlement does not improperly grant preferential treatment to the Class Representative or any individual segments of the Class.

Each Settlement Class member, including the Named Plaintiff, will be entitled to payment based on the plan of allocation. Each Settlement Class member's lump sum payment will be determined as follows:

Weeks worked by Class Members will be calculated by the Claims Administrator based on inception and termination dates for weeks worked during the liability period of September 13, 2003 and September 1, 2008. Only full weeks will be counted, i.e., if an employee was hired or terminated mid-week then that week will not count as a week worked.

As per paragraph VI(G) of the Settlement Agreement, the Claims Administer shall calculate the number of Adjusted Weeks Worked as follows: Class Members will receive one week of credit for each Regular Work Week. Class Members will receive 1.25 weeks of credit for each On-Call Work Week. The total of all Adjusted Weeks Worked for all Class Members shall yield the total Class Weeks

Worked.

Each Class Member's Adjusted Weeks Worked shall be divided by the Class Weeks Worked to determine that Class Member's percentage of the Net Maximum Amount that the Class Member will be eligible to receive. Thus, an individual's payment will equal his/her Adjusted Weeks Worked divided by the Class Weeks Worked, times the Net Maximum Amount. Decl. Blumenthal, ¶ 17.

In addition, the Plaintiff will apply to the trial court for a Named Plaintiff Enhancement of $10,000. In Glass, the district court recently awarded each of the class representatives in an overtime wages class action a service award of $25,000. Glass, 2007 U.S. Dist. LEXIS 8476 at *51-52.

**4. The Stage Of The Proceedings Is Sufficiently Advanced To Permit Preliminary Approval Of The Settlement**

The stage of the proceedings at which this settlement was reached also militates in favor of preliminary approval and ultimately, final approval of the settlement. Class Counsel has conducted a thorough investigation into the facts of the class action. Class Counsel began investigating the Class Members' claims before this action was filed. Class Counsel performed formal discovery before mediation, which discovery included document requests, interrogatories, admissions and depositions. Class Counsel also obtained production of extensive business and payroll records produced through informal discovery. Class Counsel engaged in an extensive review and analysis of the relevant documents and data with the assistance of experts. Accordingly, the agreement to settle did not occur until Class Counsel possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained through further litigation.

Based on the foregoing data and their own independent investigation and evaluation, Class Counsel is of the opinion that the settlement with SunGard for the consideration and on the terms set forth in this Stipulation of Settlement is fair, reasonable, and adequate and is in the best interest of the class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by SunGard, and numerous potential appellate issues. SunGard and SunGard's counsel also agree that the Settlement is fair and in the best interest of the Class Members.

There can be no doubt that Counsel for both parties possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be

obtained through further litigation. Decl. Blumenthal ¶ 25-26.

In Glass, the Northern District of California recently granted final approval of an overtime wage class action although in Glass no formal discovery had been conducted prior to the settlement:

> Here, no formal discovery took place prior to settlement. As the Ninth Circuit has observed, however, "[i]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." See In re Mego Financial Corp. Securities Litigation, 213 F.3d at 459.

2007 U.S. Dist. LEXIS 8476 at *14.

Here, Class Counsel was in a significantly stronger position to evaluate the fairness of this settlement than in Glass because Class Counsel conducted formal discovery and obtained informal discovery, as well as independent investigations and due diligence to confirm the accuracy of the information supplied by SunGard.

## VI. THE CLASS IS PROPERLY CERTIFIED FOR SETTLEMENT PURPOSES

The proposed settlements meet all of the requirements for class certification under F.R.C.P. §23(b)(2) as demonstrated below, and therefore, the Court may appropriately approve the settlement classes as defined in the Stipulation of Settlement. This Court should conditionally certify a settlement class for settlement purposes only that consists of "all individuals who work or worked in California for SunGard Higher Education Inc., SunGard Higher Education Managed Services Inc, or Systems and Computer Technology Corporation in a Covered Position at any time during the Class Period." Settlement Agreement at § I(F).

### A. Rule 23 of the Federal Rules of Civil Procedure Governs

Plaintiff seeks certification of this Action for settlement purposes under F.R.C.P §23(b)(3). This portion of rule 23 applies to class actions where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

To maintain a class action under rule 23(b)(3), the four prerequisites of F.R.C.P. Rule 23(a) must first be satisfied. These prerequisites are referred to as numerosity, commonality, typicality, and

adequacy of representation, and are set forth in Rule 23(a) as follows:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

While SunGard disputes that Plaintiff can satisfy any of these requirements, the Parties agree that, for purposes of settlement, these requirements may be satisfied in this case, and therefore, the proposed Settlement Class should be certified for purposes of settlement.

**B. The Numerosity Requirement Is Satisfied**

Rule 23(a) merely requires that the class be "so numerous that joinder of all members is impracticable." F.R.C.P. §23(a). "Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." EEOC v. Kovacevich "5" Farms, 2007 U.S. Dist. LEXIS 32330 at *57 (E.D.Cal. April 18, 2007). "Numerosity is also satisfied where joining all Class members would serve only to impose financial burdens and clog the court's docket." Id..

In Ansari v. New York Univ., 179 F.R.D. 112, 114 (S.D.N.Y. 1998), the District Court explained the numerosity requirement as follows: "Generally speaking, courts will find that the 'numerosity' requirement has been satisfied when the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." See also Hendricks-Robinson v. Excel Corp., 164 F.R.D. 667, 671 (C.D. Ill. 1996) (thirty-eight (38) class members satisfied numerosity); Riordan v. Smith Barney, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (certifying a class of twenty-nine); In re Kirschner Medical Corp. Sec. Litig., 139 F.R.D. 74, 78 (D. Md. 1991) (noting that a class of more than 25 to 30 members "raises the presumption that joinder would be impracticable"); Slaven v. BP Am., Inc., 190 F.R.D. 649, 654 (C.D. Cal. 2000) (numerosity "requirement is satisfied by a showing of 25-30 members"). In Kilgo v. Bowman Transp., Inc., 789 F.2d 859, 878 (11th Cir. 1986), the Court of Appeals affirmed the District Court's finding that numerosity was satisfied by a class comprised of 31 job applicants. Here, the Settlement Class is composed of 33 employees, which is sufficiently numerous

under settled precedent, and which the parties agree is sufficiently numerous for purposes of this settlement only.

### C. Common Questions of Law and Fact Bind the Class

Rule 23(a) requires that there be a common question of law or fact. There is no requirement that the members of the class be identically situated, only that there exists one or more factual or legal questions common to all members. Jenson v. Continental Fin. Corp., 404 F. Supp. 806 (D. Minn. 1975). This threshold of "commonality" is not particularly high. Jenkins v. Raymark Ind., Inc., 782 F.2d 468, 472 (5th Cir. 1986). The fundamental question is whether the resolution of the common legal or factual questions would affect all or a substantial number of the class members. Jenkins, supra, 782 F.2d at 472. Indeed, if a claim "arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment." Donaldson v. Pillsbury Co., 554 F.2d 825, 831 (8th Cir. 1977), cert. denied, 434 U.S. 856 (1977).

Rule 23(a) is satisfied where "the course or conduct giving rise to the cause of action affects all class members, and at least one of the elements of that cause of action is shared by all of the class members." Lockwood Motors v. General Motors, 162 F.R.D. 569, 575 (D. Minn 1995). This requirement is met if common questions of liability are present, even if there may be individual variations. In re Workman's Comp., 130 F.R.D. 99, 104 (D. Minn. 1990).

Here, common questions of law and fact, as alleged by the Plaintiff, are present, specifically the question of whether the employees in the positions titled Network Specialist or Network Administrator employed by SunGard are "exempt." SunGard does dispute that commonality actually exists, but will not oppose such a finding for purposes of this settlement only.

### D. The Claims of the Plaintiff Are Typical of the Class Claims

The typicality requirement of Rule 23(a) requires the Plaintiff to demonstrate that the members of the class have the same or similar claims as the named Plaintiff. "The typicality requirement is met when the claims of the named Plaintiff arise from the same event or are based on the same legal theories." Tate v. Weyerhaeuser Co., 723 F.2d 598, 608 (8th Cir. 1983). In Hanlon v. Chrysler Co., 150 F.3d 1011 (9th Cir. 1998), the Ninth Circuit held that "[u]nder the rule's permissive standards,

representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." 50 F.3d at 1020. Typicality "does not mean that the claims of the class representative[s] must be identical or substantially identical to those of the absent class members." Stanton, supra, at 957.

In the instant case, there can be little doubt that the typicality requirement is fully satisfied. Plaintiff, like every other member of the Class, was employed by SunGard in California in a Covered Position and was classified as "exempt" by SunGard. Plaintiff, like every other member of the Class, claims unpaid overtime wages for work performed. Thus, the claims of both the Plaintiff and the Members of the Class arise from the same course of conduct by the SunGard, involve the same work performed in connection with the SunGard computer systems, and are based on the same legal theories. The typicality requirement of Rule 23 is met as to the common issues presented in this case. While SunGard disputes that Plaintiff has claims typical of the individuals he purports to represent, SunGard will not oppose a finding of typicality for purposes of this settlement only.

### E. The Class Representatives Has Fairly and Adequately Protected the Interest of the Class

The Class Representative provided adequate representation of the interests of the class in that: (a) his attorneys are competent, experienced in class litigation and generally able to conduct the proposed litigation; and (b) the Class Representative does not have interests antagonistic to those of the class. White v. Local 942, 688 F.2d 85, (9th Cir. 1982). Simply put, Rule 23 asks whether the Class Representative will vigorously prosecute on behalf of the class and have a basic understanding of the claims. This requirement has been met here. First, Plaintiff is well aware of his duties as representatives of the class and has actively participated in the prosecution of this case to date. Plaintiff effectively communicated with counsel, provided documents to counsel and participated extensively in discovery and investigation of the Action. Second, Plaintiff has retained competent counsel who have extensive experience in consumer class actions. See Decl. Blumenthal at ¶ 29. Class Counsel has extensive experience in class action litigation in California and throughout the country. Class Counsel has been involved as class counsel in over two hundred (200) class action matters, including many wage and hour class actions. See, e.g., Resume, attached as Exhibit "B" to the Declaration of Blumenthal. Third, there

is no antagonism between the interests of the named Plaintiff and those of the Class. Both the Plaintiff and the Members of the Class seek monetary relief under the same set of facts and legal theories. Under such circumstances, there can be no conflicts of interest, and adequacy of representation is presumed. In re Wirebound Boxes Antitrust Lit., 128 F.R.D. 268 (D. Minn. 1989). While SunGard disputes that the Plaintiff is an adequate class representative, SunGard does not oppose such a finding for purposes of this settlement only.

### F. The Additional Requirements of Rule 23 Are Satisfied

Since the requirements of Rule 23(a) have been satisfied, the Court now must look to Rule 23(b)(3) in order to determine whether a class should be maintained under one of the listed categories. Under Rule 23(b)(3), a class action may be maintained if two basic conditions are met. First, common questions must predominate over individual issues, and second, the class action must be superior to other available other methods for the fair and efficient adjudication of the controversy.

#### 1. The Predominance Requirement Is Met

Rule 23(b)(3) provides that a class may be maintained if "the court finds that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members." There is no bright line to determine whether common issues predominate. A claim will meet the predominance requirement in cases where generalized evidence of the Defendants' conduct will prove or disprove an element of the claim on a simultaneous class-wide basis. The "fundamental question" is whether the claim asserted is seeking a remedy to a "common legal grievance." Lockwood Motors, 162 F.R.D. at 580; Buchholtz v. Swift & Co., 62 F.R.D. 581, 598 (D.Minn. 1973). Further, the mere fact that there are certain issues that may need to be determined on an individual basis does not preclude the satisfaction of the predominance requirement. See Newberg & Comte, Newberg on Class Actions §4.25 (3d ed. 1992).

Here, the adjudication of the common issues surrounding SunGard's uniform and systematic acts could establish SunGard's liability on a class-wide basis. Plaintiff contends that SunGard had engaged in a uniform course of conduct with respect to the Settlement Class; the only question is whether SunGard's conduct supports a meritorious claim. Such suits challenging the legality of a standardized

course of conduct are generally appropriate for resolution by means of a class action. Accordingly, the common issues of law and fact present in this case predominate.

In the context of overtime pay litigation, courts have often found that common issues predominate where an employer treats the putative class members uniformly with respect to compensation, even where the party opposing class certification presents evidence of individualized variations. For example, in Wang v. Chinese Daily News, 231 F.R.D. 602, 613 (C.D. Cal. 2005), the court held that the defendant "cannot, on the one hand, argue that all [putative class members] are exempt from overtime wages and, on the other hand, argue that the Court must inquire into the job duties of each [putative class member] in order to determine whether that individual is 'exempt.'" See also In re Wells Fargo Home Mortg. Overtime Pay Litig., 2007 U.S. Dist. LEXIS 77525 (N.D. Cal. October 17, 2007) at *17-18; See also Tierno v. Rite Aid Corp., 2006 U.S. Dist. LEXIS 71794, (N.D. Cal. Aug. 31, 2006), in Krzesniak v. Cendant Corp., 2007 U.S. Dist. LEXIS 47518,(N.D. Cal. June 20, 2007) (where a putative class action plaintiff challenges a policy of classifying all employees of a given title as exempt, individualized inquiries into the job duties of each employee are not necessary to determine whether each employee is exempt).

While SunGard disputes that the predominance requirement may be satisfied, it will not oppose such a finding for purposes of this settlement only.

**2. The Superiority Requirement Is Met**

To certify a class, the Court must also determine "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." F.R.C.P. Rule 23 (b)(3). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996); In re Wells Fargo Home Mortg. Overtime Pay Litig., supra, 2007 U.S. Dist. LEXIS 77525 at * 33.

"If the plaintiffs' claims are substantiated, a question as to which the court presently has no opinion, the class action mechanism is clearly the most efficient means of resolving the many claims which may be asserted. If the case were not handled as a class, thousands of small claims would either

be brought or unjustly abandoned. The first possibility would be a flood of cases, the second would involve individual claims abandoned because of cost." In re Workers Compensation., 130 F.R.D. 99, 110 (D.Minn. 1990).

Here, a class action is the superior mechanism for adjudication of the claims as pled by the Plaintiff. While SunGard disputes that the superiority requirement may be satisfied, it will not oppose such a finding for purposes of this settlement only.

## VII. THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE

The Parties have agreed upon procedures by which the Class will be provided with written notice of the Settlement similar to that approved and utilized in hundreds of class action settlements. The Parties have jointly drafted a Notice of Preliminary Approval of the Settlement, attached to the Blumenthal Declaration as Exhibit 1 in Exhibit "A" and is hereby submitted to the District Court for approval. The Claims Administrator will mail individual Notices to the members of the Settlement Class via first-class regular U.S. mail using the most current mailing address information available from SunGard's payroll records, which shall be updated by the Claims Administrator to correct for any known or identifiable address changes.

The Notice, drafted jointly and agreed upon by the Parties through their respective counsel, includes information regarding the nature of the Litigation; a summary of the substance of the Settlement, including SunGard's denial of liability; the definition of the Settlement Class; the procedure and time period for objecting to the Settlement and participating in the Final Approval hearing; a statement that the District Court has preliminarily approved the Settlement; and information regarding the claims filing procedure and the opt-out procedure. See Exhibit #1 to Stipulation of Settlement, attached as Exhibit 1 to the Blumenthal Declaration. Attached to the Notice will be a Claim Form, a Request for Exclusion Form and a Challenge Form, in the forms attached to the Stipulation of Settlement as Exhibits #2, 3 and 4 respectively.

The costs associated with the mailing will be paid out of the Settlement Amount. The Claims Administrator shall disseminate the settlement Notice and Claim Form to the Class, by U.S. mail, within thirty (30) days of the entering of the order granting preliminary approval of the Settlement.

The Notice shall state that Class Members who wish to participate in the settlement shall complete and return the Claim Form pursuant to the instructions contained therein by first class mail or equivalent, postage paid. The Notice shall also provide that any Class Member may choose to opt out of the Class, and that any such person who chooses to opt out of the Class will not be entitled to any recovery obtained by way of the settlement and will not be bound by the settlement or have any right to object, appeal or comment thereon.

The Notice will provide that all objections to the Settlement by anyone, including members of the Settlement Class, must be filed in the District Court and served upon all counsel of record by no later than forty-five (45) days from the mailing of the Notice of Preliminary Approval. The 45-day period applies notwithstanding any argument regarding non-receipt of the notice. All objections must state with particularity the basis on which they are asserted. Further, if any objector intends to appear at the Final Approval hearing, either in person or through counsel, he or she must include notice of that fact and state the purpose for his or her appearance in his or her objection.

The notice will provide that to opt out of the Settlement Class, a class member must file the Request for Exclusion Form attached to the Notice within 45 days of the mailing date of the Notice of Preliminary Approval of the Settlement (the "Opt-out Period").

This notice program was designed to meaningfully reach the largest possible number of potential Class Members. The mailing and distribution of the Notice satisfies the requirements of due process, and is the best notice practicable under the circumstances and constitutes due and sufficient notice to all persons entitled thereto.

This notice satisfies the content requirements for notice following the exemplar class notice in the Manual for Complex Litigation, Second §41.43. This notice also fulfills the requirement that Class notices be neutral. Newberg,§8.39.

## VIII. CONCLUSION

Counsel for the Parties have committed substantial amounts of time, energy, and resources litigating and ultimately settling this case. In the judgment of Plaintiff and Class Counsel, the proposed settlement is a fair and reasonable compromise of the issues in dispute in light of the strengths and

weaknesses of each party's case. After weighing the substantial, certain and immediate benefits of these settlements against the uncertainty of trial, and appeal, Plaintiff believes the proposed settlement is fair, reasonable and adequate, and warrants this Court's preliminary approval.

Accordingly, Plaintiff respectfully requests that the Court preliminarily approve the proposed settlements, certify the Class for settlement purposes, schedule a date for a hearing on Final Approval, and sign the proposed Preliminary Approval Order submitted herewith.

Dated: October 15, 2008

BLUMENTHAL & NORDREHAUG

By: */s/Norman B. Blumenthal*
Norman B. Blumenthal

UNITED EMPLOYEES LAW GROUP
Walter Haines (State Bar #71075)
65 Pine Ave, #312
Long Beach, CA 90802
Telephone: (562) 256-1047
Facsimile: (562) 256-1006

Attorneys for Plaintiff

G:\D\NBB\Delmare\Preliminary Approval\p-memorandum-01.wpd